# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

BARRI JO (GEORGE) GREEN, )
)
    Plaintiff/Appellant, ) Gibson Chancery No. 8852
)
VS. ) Appeal No. 02A01-9711-CH-00279
)
LANNY DEAN GEORGE, )
)
    Defendant/Appellee. )

FILED

April 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF GIBSON COUNTY
AT TRENTON, TENNESSEE
THE HONORABLE GEORGE R. ELLIS, CHANCELLOR

**BOBBY A. McGEE**
Linden, Tennessee
Attorney for Appellant

**J. MARK JOHNSON**
Trenton, Tennessee
Attorney for Appellee

**REVERSED, VACATED, AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

    Barri Jo Green ("Barri") appeals from the Gibson County Chancery Court's denial

of her motion to dismiss custody proceedings that were brought in the chancery court after dependent and neglect proceedings were commenced in the Gibson County Juvenile Court. Based upon the following, we reverse.

**Facts and Procedural History**

On August 3, 1990, Barri filed a Complaint for Absolute Divorce against Lanny Dean George ("Lanny") in the Gibson County Chancery Court, after having been married to Lanny since August 1986. In Barri's complaint, she sought custody of and child support for the parties' one minor child, Samantha, who was then an infant. On August 16, 1990, the chancery court entered an Agreed Order for Temporary Custody and Child Support, which awarded Barri "temporary custody and temporary child support pending a full hearing of this cause." Thereafter, on March 4, 1991, Barri's action for divorce was heard by the chancery court. The chancery court entered a judgment awarding Barri an absolute divorce on May 7, 1991. By agreement of the parties, the court's order further awarded custody of and child support for Samantha to Barri.

On April 19, 1993, Lanny petitioned the chancery court to modify Samantha's custody so as to award Lanny custody. He also separately filed a motion for "temporary custody" of Samantha. He based his petition upon the assertion that Samantha had been "severely whipped and/or beaten" when Lanny last obtained the child for visitation, and that Samantha had also been beaten on previous occasions. This, he asserted, constituted a sufficient change of circumstances to warrant a change of custody from Barri to Lanny. On the same date, April 19, 1993, the chancery court entered a temporary restraining order that awarded temporary custody to Lanny and prohibited Barri from attempting to obtain possession of Samantha pending a final hearing on Lanny's petition to change custody.

Concurrent with the filing of Lanny's petition and motion in the Gibson County Chancery Court, however, the State of Tennessee Department of Human Services ("the State") commenced dependent and neglect proceedings in the Gibson County *Juvenile*

2

Court by filing a petition for temporary custody. The State's petition alleged that Samantha was dependent and neglected and sought "an immediate protective custody order placing the temporary care, custody, and control" of Samantha with either the State or with Lanny. Accordingly, the juvenile court judge signed a protective custody order on April 19, 1993, that awarded temporary care and custody to the State for foster care with Lanny. Moreover, the juvenile court appointed a guardian *ad litem* for Samantha. The petition and protective custody order were both filed with the juvenile court clerk on April 20, 1993. On April 21, 1993, the juvenile court held a preliminary hearing on the State's petition, whereafter, by order entered May 10, 1993, it awarded temporary custody of Samantha to the State, though Samantha's actual physical custody was to remain with Lanny.

On March 15, 1994, the juvenile court entered a consent order, which stated the following:

> The State . . . consents to both temporary legal and physical custody of . . . Samantha . . . being awarded to the father, Lanny George.
> It is therefore ORDERED that temporary legal custody of . . . Samantha . . . shall be divested out of the State . . . and that both the temporary legal and physical custody of said child shall be awarded to and vested in the child's natural father, Lanny George.

Thereafter, the order set forth an arrangement for supervised visitation by Barri, and provided that "the Court shall review this matter on . . . August 5, 1994 . . . ." Lastly, the order expressly established that any final adjudicatory decision of whether Samantha is dependent and neglected shall be reserved. The matter was thereafter reviewed by the juvenile court on August 5, 1994, at which time the court entered another interlocutory order and continued the matter further. The matter was again brought before the juvenile court on September 11, 1995, after which the juvenile court entered an order, on January 17, 1996, that stated,

> [T]he Court finds that while this is taken as disposition on a finding of dependent and neglected, the attenuated process of these hearings must be considered. In weighing hours of testimony given the Court finds that it is in the best interest of the minor child that custody be returned to the mother and all incidents relating to visitation, etc. in effect by the Chancery Court are to be followed.

It is relevant to note, however, that the matter before this Court does *not* involve any appeal from the juvenile court's January 17, 1996 award of custody to Barri.

On September 15, 1995 (after the September 11 juvenile court hearing, but before the entry of the juvenile court's January 17 order), Lanny filed a petition for change of custody in the *chancery* court, wherein he sought permanent custody of Samantha. This petition further sought a restraining order to prevent Barri from interfering with Lanny's custody. On the same date, September 15, 1995, the chancery court entered such a restraining order. Shortly thereafter, on September 19, 1995, Barri filed a motion to dismiss with the chancery court, asserting, "That the provisions of T.C.A. 37-1-103, clearly show that the exclusive original jurisdiction over . . . Samantha . . . shall remain with the Juvenile Court until the child reaches the age of nineteen (19) years."

On March 14, 1997, the chancery court entered an interlocutory order that awarded temporary custody of Samantha to Lanny. On April 14, 1997, Barri moved for a Rule 9 interlocutory appeal by permission from the trial court, seeking to appeal from the March 14, 1997 interlocutory order. See Tenn. R. App. P. 9. On September 9, 1997, at the direction of the chancellor, Barri filed a "renewed" motion to dismiss, though no written order had yet been entered disposing of her prior motion to dismiss. This motion to dismiss again sought dismissal of Lanny's petition for change of custody, wherein he sought permanent custody of Samantha, based upon the assertion that the chancery court lacked jurisdiction to adjudicate Samantha's custody. On October 7, 1997, the chancery court denied Barri's motion to allow a Rule 9 interlocutory appeal from the March 14, 1997 award of temporary custody to Lanny. It reserved ruling on all other pending matters, including Barri's motion to dismiss, at that time.

On November 7, 1997, Barri sought a Rule 10 extraordinary appeal by permission from this Court. On December 8, 1997, this Court ordered that proceedings in this Court be held in abeyance pending the chancery court's disposition of the motion to dismiss. Thereafter, on December 12, 1997, Barri again filed a "renewed" motion to dismiss in the chancery court. On April 9, 1998, after Barri's motion to dismiss was again brought before the chancery court, the chancery court denied Barri's motion to dismiss. Thereafter, on May 4, 1998, Barri filed a revised Rule 10 application for extraordinary appeal by

4

permission from this Court, which we granted by order dated May 21, 1998.

As such, the issue before this Court is whether the Gibson County Chancery Court continues to have subject matter jurisdiction as to Samantha's custody, even *after* the commencement of juvenile court proceedings wherein Samantha has been alleged to be dependent and neglected.

**Analysis**

There exists no dispute that, after the chancery court's divorce decree as to Lanny and Barri, and before the commencement of dependent and neglect proceedings in the juvenile court, the chancery court possessed subject matter jurisdiction to hear and rule upon disputes relating to Samantha's custody. Such jurisdiction is established by Tennessee Code Annotated section 36-6-101(a)(1), which provides the following:

> In a suit for . . . divorce . . . , where the custody of a minor child . . . is a question, the court may . . . award the care, custody and control of such child . . . to either of the parties to the suit . . . as the welfare and interest of the child . . . may demand, and the court may decree that suitable support be made . . . . *Such decree shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require.*

Tenn. Code Ann. § 36-6-101 (Supp. 1998) (emphasis added). Section 36-6-101, however, further states, "Nothing in this chapter shall be construed to alter, modify or restrict the exclusive jurisdiction of the juvenile court pursuant to § 37-1-103." Id. § 36-6-101(c).

As contended by Barri, we find that the issue before this Court is controlled by the plain and unambiguous language of section 37-1-103, which provides the following:

> (a) The juvenile court has *exclusive* original jurisdiction of the following proceedings, which are governed by this part:
> (1) Proceedings in which a child is *alleged* to be delinquent, unruly or *dependent and neglected*, or to have committed a juvenile traffic offense as defined in § 37-1-146;
> . . . .
> (c) When jurisdiction has been acquired under the provisions of this part, such jurisdiction shall continue until a person reaches the age of eighteen (18), except that the court may extend jurisdiction for the limited purposes set out in § 37-1-102(b)(4)(B) until the person reaches the age of nineteen (19).

Tenn. Code Ann. § 37-1-103 (Supp. 1998) (emphasis added). Based upon this statute,

once a petition is filed in juvenile court to declare a child dependent and neglected, the juvenile court has exclusive jurisdiction regarding custody of the child, and any subsequent order concerning custody entered by the chancery court, which in this case is the court having jurisdiction over the original divorce proceeding, is void. State v. Gouvitsa, 735 S.W.2d 452, 457 (Tenn. App. 1987). See also Arnold v. Gouvista, 735 S.W.2d 458 (Tenn. App. 1987); Kidd v. State ex rel. Moore, 207 Tenn. 244, 338 S.W.2d 621 (1960); Marmino v. Marmino, 34 Tenn. App. 352, 238 S.W.2d 105 (1950).

> That this jurisdiction was intended to be exclusive is reinforced by the omission of dependency and neglect proceedings from T.C.A. § 37-1-104, which lists the various proceedings in which the juvenile court shares concurrent jurisdiction with other courts.

Gouvitsa, 735 S.W.2d at 455. Therefore, the Gibson County Chancery Court had no jurisdiction over Samantha's custody after the State commenced dependent and neglect proceedings in juvenile court. See Gouvitsa, 735 S.W.2d at 457.

> The jurisdiction of the court entertaining delinquency or dependency proceedings is continuing, to the exclusion of any other court of concurrent jurisdiction, and except as jurisdiction may be relinquished in accordance with statute, once a juvenile court has entertained jurisdiction over a child that court must take affirmative action to dispose of the case in one of the ways provided by statute before jurisdiction can terminate. Ordinarily, the jurisdiction of the court continues until the child reaches majority, or the age specified by statute....

Gouvitsa, 735 S.W.2d at 455-56 (quoting 43 C.J.S. Infants § 53 (1978)). Section 37-1-103 sets forth only one manner by which the juvenile court's exclusive jurisdiction may be relinquished, that being the child's attainment of the age of majority. See Tenn. Code Ann. § 37-1-103(c). Accordingly, the chancery court's denial of Barri's motion to dismiss must be reversed as to any claims regarding Samantha's custody.

Moreover, we further note that, while Lanny did not submit a brief to this Court, any argument that he might have raised as to whether the juvenile court conferred or transferred its jurisdiction to the chancery court would be unsuccessful.[1] This Court has twice previously recognized, in two unreported opinions, that a juvenile court exercising exclusive jurisdiction over custody matters cannot confer its jurisdiction on another court.

---

1. The record on appeal in this case suggests that the juvenile court deemed its role in Samantha's custody to be concluded upon the entry of its January 17, 1996 order, and that it deemed any further proceedings concerning Samantha's custody to be matters for the chancery court to resolve.

Simpkins v. Greer, No. 01-A-01-9202-CH00060, 1993 WL 18311 at *3 (Tenn. App. Jan. 29, 1993); Hicks v. Hicks, No. 01A01-9309-CH-00417, 1994 WL 108896 at *2 (Tenn. App. March 30, 1994).  In Simpkins v. Greer, this Court stated,

> It is clear that *the parties* cannot confer subject matter jurisdiction on the court by consent.  *See Curtis v. Garrison*, 211 Tenn. 339, 346, 364 S.W.2d 933, 936 (1963); *James v. Kennedy*, 174 Tenn. 591, 595, 129 S.W.2d 215, 216 (1939).  We think it is equally clear that *a court* cannot confer subject matter jurisdiction on another court.  Tenn. Const. art. 6, § 1 grants the legislature the power to determine how many and what kinds of courts are required for the administration of justice and the power to fix the limits of each court's jurisdiction.  *See State ex rel. Ward v. Murrell*, 169 Tenn. 688, 692, 90 S.W.2d 945, 946 (1936).  Courts possess "only such jurisdictional powers as are directly, or indirectly, expressly or by implication, conferred upon [them] by the constitution or legislation of the soverignty on behalf of which [they] function."  20 Am. Jur. 2d Courts § 91 (2d ed. 1965); *see also Coonradt v. Sailors*, 186 Tenn. 294, 305, 209 S.W.2d 859, 863 (1948); *McHenry's Lessee v. Wallen*, 10 Tenn. 441, 444 (1830).

Simpkins, 1993 WL 18311 at *3.


It must be noted, however, that the chancery court proceedings in this case also involve such issues as child support, as to which this Court has stated the following:

> the juvenile court will not adjust parental disputes concerning the care and education of a minor, such matters being for a court of equity where the parents are actual parties.

Gouvitsa, 735 S.W.2d at 455 (quoting 43 C.J.S. *Infants* § 53 (1978)).  Accordingly, while we have found it necessary to reverse the trial court's denial of Barri's motion to dismiss as to any claims regarding Samantha's custody, we further find it appropriate to remand this case for any further proceedings as may be appropriate in light of this opinion.


**Conclusion**


Based upon the foregoing, the chancery court's denial of Barri's motion to dismiss as to any claims regarding Samantha's custody is hereby reversed, and any award of temporary custody entered by the chancery court after the commencement of the dependent and neglect proceedings in the juvenile court is void and hereby vacated.  All issues concerning Samantha's custody remain in the Gibson County Juvenile Court.  This case is hereby remanded to the Gibson County Chancery Court for further proceedings as

hereinabove set forth.  Costs of this appeal are taxed to Lanny, for which execution may issue if necessary.

_____HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.

8